

**IT IS ORDERED as set forth below:**


**Date: June 22, 2026**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| **MOHAMMAD ASIF BALAGAMWALA,** | : | CASE NO. **25-60595-PMB** |
| | : | |
| Debtor. | : | CHAPTER 7 |
| | : | |
| **FRANCIS JARRETT** | : | |
| **and DAMEATRA JARRETT,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | ADVERSARY PROCEEDING |
| v. | : | |
| | : | NO. **25-5167** |
| **MOHAMMAD ASIF BALAGAMWALA,** | : | |
| | : | |
| Defendant. | : | |

**ORDER DENYING PLAINTIFFS' AMENDED**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter is before the Court on the *Plaintiffs' Amended Motion for Judgment on the*

*Pleadings and Memorandum of Law in Support,* filed by the Plaintiffs herein, Francis Jarrett and

Dameatra Jarrett (the "Plaintiffs"), on March 16, 2025 (Docket No. 16)(the "Motion for

Judgment"). The Debtor-Defendant Mohammad Asif Balagamwala (the "Debtor") filed *Defendant's Response to Plaintiffs' Amended Motion for Judgment on the Pleadings* on April 10, 2026 (Docket No. 18)(the "Response").

### Background

The Plaintiffs commenced this Adversary Proceeding (the "Adversary Proceeding") through the filing of a *Complaint for Determination of Dischargeability of Debt and Objection to Discharge* against the Debtor on September 15, 2025 (Docket No. 1)(the "Complaint").[1] The Debtor filed *Defendant's Rule 12(B)(6) Motion to Dismiss Complaint and Memorandum in Support* on October 16, 2025 (Docket No. 3)(the "Motion"), in response to which the *Plaintiffs' Response to Defendant's Motion to Dismiss* was filed on November 3, 2025 (Docket No. 4). On December 22, 2025, the Court entered an *Order Granting in Part and Denying in Part Debtor's Motion to Dismiss Complaint* (Docket No. 5)(the "Order"). In the Order, the Court dismissed the Plaintiffs' objection to discharge, but denied the Motion as to the claim for nondischargeability of debt under 11 U.S.C. § 523(a)(2)(A). The parties were then allowed thirty (30) days to file any dispositive motions.

When no dispositive motions were timely filed, the Court entered an *Order and Notice of Status Conference* on February 25, 2026, setting a status conference in this matter for March 9, 2026 (Docket No.8)(the "Status Conference"). The Plaintiffs then promptly filed *Plaintiffs' Motion for Additional Time to File a Dispositive Motion* on February 27, 2026 (Docket No. 9), to which the Debtor filed his *Response to Plaintiffs' Motion for Additional Time to File a Dispositive*

---

[1] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

*Motion* on February 28, 2026, opposing the requested extension (Docket No. 11).   Thereafter, the Plaintiffs filed their *Plaintiffs' Motion for Judgment on the Pleadings and Memorandum in Support* on March 2, 2026 (Docket No. 12).   (This pleading was amended on March 16, 2026, as the Motion for Judgment herein).   As discussed below, since the discovery period had ended, during the Status Conference held on March 9, 2026, the Court inquired concerning what a trial would be about—*i.e.,* what facts would be in dispute and require evidence.

On March 11, 2026, based on the discussion at the Status Conference, the Court entered its *Scheduling Order, Order Granting Motion to Extend Time, and Order Permitting Amendment to Complaint* (Docket No. 13).   As allowed, the Plaintiffs filed their *First Amended Complaint for Determination of Dischargeability of Debt and Objection to Discharge* on March 11, 2026 (Docket No. 14)(the "Amended Complaint").   The Amended Complaint contains two (2) counts.   Under Count I, the Plaintiffs seek a determination that a certain judgment debt as described below and owed by the Debtor is excepted from discharge under 11 U.S.C. § 523(a)(2)(A).   In Count II, the Plaintiffs seek an award of attorneys' fees under O.C.G.A. § 13-6-11.   The Debtor filed his *Answer of Defendant Mohammed Asif Balagamwala to Plaintiffs' Amended Complaint for Determination of Dischargeability* on April 10, 2026 (Docket No. 17).   The Motion for Judgment and the Response are currently before the Court for decision.

### Standard of Review

The Plaintiffs seek relief based on Federal Rule of Civil Procedure ("F.R.C.P.") 12(c), which provides that "[a]fter the pleadings are closed—but early enough to not delay trial—a party may move for judgment on the pleadings."   *See also* Federal Rule of Bankruptcy Procedure 7012(b)(incorporating F.R.C.P. 12(b)-(i) into adversary proceedings).   Entry of judgment on the

pleadings is proper "when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023); *see also Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) ("judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts").   In reviewing a motion for judgment on the pleadings, all well-pleaded facts are accepted as true, and the court views them in the light most favorable to the party opposing the entry of judgment.  *Samara v. Taylor*, 38 F.4th 141, 149 (11th Cir. 2022), citing *Cannon v. City of West Palm Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001).   The legal standard of review for a motion for judgment on the pleadings is the same as used in evaluating a motion to dismiss under F.R.C.P. 12(b)(6).   *See In re Sullivan*, 2017 WL 2963370, at *2 (Bankr. N.D. Ga. July 11, 2017; *In re McGee*, 2023 WL 6202458, at *1–2 (Bankr. N.D. Ga. Sept. 22, 2023).[2]

## Factual Allegations

In the Amended Complaint, the Plaintiffs again seek a determination that a certain obligation in the total amount of $790,186 owed to them by the Debtor (the "Obligation") should be excepted from the Debtor's discharge in this case under 11 U.S.C. § 523(a)(2)(A).[3]   The Obligation is based on entry of an *Amended Final Order and Judgment as to Defendant Asif Balagamwaca* [sic][4] *Only* by the Superior Court of Fulton County, Georgia (the "Superior Court"),

---

[2] Under F.R.C.P. 12(b)(6), the applicable standard is whether a complaint contains sufficient factual allegations "'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bel Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[3] Much of this same case history was included in the Order.

[4] The Debtor corrected the spelling of his name in the *Defendants' Joint Answer and Defenses* (the "Defendants' Answer"), attached to Amended Complaint as Exhibit B.

4

in Civil Action No. 2018CV314564 (the "Civil Action") on August 26, 2019 (the "Superior Court Amended Judgment")(copy attached to Amended Complaint as Exhibit E) awarding damages, including punitive damages.   The Plaintiffs commenced the Civil Action by filing a *Complaint* on December 21, 2018 (the "Superior Court Complaint")[5] in connection with the Debtor's alleged role in a fraudulent transfer of assets from Greenparts, Inc. to Green Parts International, Inc. (the "Transfer") for the purpose of evading liability from a judgment that had previously been obtained by the Plaintiffs against Greenparts, Inc.[6]

The Plaintiffs allege that as the president of Greenparts, Inc., the Debtor devised and executed a fraudulent scheme by transferring the assets of Greenparts, Inc. to Green Parts International, Inc.   The Debtor also served as president of Green Parts International, Inc. and owns one hundred (100%) percent of its stock.   Any nominal distinction between these corporate entities was "a sham" according to the Plaintiffs, as he created the latter solely to carry out the Transfer.   The Plaintiffs assert that by means of this scheme, the Debtor intentionally disregarded the separate corporate form of these entities causing economic injury to the Plaintiffs by frustrating their collection on the Consent Judgment.   Further, punitive damages were assessed against the

---

[5] The Civil Action was styled *Francis Jarrett and Dameatra Jarrett v. Green Parts International Inc., and Asif Balagamwaca* [sic].   The Superior Court Complaint contained the following counts: (I) Alter Ego; (II) Actual Fraudulent Transfer Under O.C.G.A. § 18-2-74(a)(1); (III) Constructive Fraudulent Transfer Under O.C.G.A. § 18-2-74(a)(2); (IV) Action to Set Aside Fraudulent Transfer; (V) Punitive Damages; and (VI) Attorney's Fees and Expenses.   *See* Superior Court Complaint, copy attached to the Amended Complaint as Exhibit A.   The defending parties in the Civil Action (the "Defendants") filed Defendants' Answer therein on February 4, 2019.

[6] Based on a complaint for personal injury filed in the Fulton County State Court on August 6, 2014, the Plaintiffs entered into a *Consent Judgment* with Greenparts, Inc. on February 16, 2018 (the "Consent Judgment")(copy attached to the Amended Complaint also marked as Exhibit A (pp. 18-19 of Amended Complaint)).   The suit was styled *Francis Jarrett and Dameatra Jarrett v. Greenparts, Inc. d/b/a Samson Auto Parts* (Civil Action File No. 14EV001735Y).   The Debtor was not a named party to that lawsuit.   As previously noted in the Order, Green Parts International, Inc. filed its own bankruptcy case under Chapter 11 on March 5, 2019, Case No. 19-53617-PMB, and that case is now closed.   *See Order and Final Decree*, entered therein on May 26, 2021.

Debtor based on the willful and fraudulent nature of these actions.   *See* Amended Complaint, ¶¶ 20-31.

On April 24, 2019, the Superior Court entered a full and final default judgment as to liability against the Debtor and Green Parts International Inc. in the Civil Action, through an *Order and Rule Nisi* (copy attached to the Amended Complaint as Exhibit C)(the "Superior Court Order").[7]   In the Superior Court Order, the Superior Court ordered that the Defendants' Answer be stricken due to their unexcused absence from a case management conference.   After a hearing on liquidated damages, the Plaintiffs received a monetary award against the Debtor on August 26, 2019, based on the Superior Court Order.   *See* Superior Court Amended Judgment (as identified above and attached to the Amended Complaint as Exhibit E).

## Discussion

I.      *The Parties' Arguments*

In the Motion for Judgment, the Plaintiffs argue that the Obligation based on the Superior Court Judgment and Superior Court Amended Judgment should be excepted from discharge under 11 U.S.C. § 523(a)(2)(A).   First, they maintain that the Debtor is precluded from denying the facts as established in the Superior Court Judgment and the Superior Court Amended Judgment under the doctrine of collateral estoppel.   Next, they contend that these facts show the Debtor used his authority as an officer to orchestrate the Transfer of assets from Greenparts, Inc. to Green Parts

---

[7] As mentioned above, during the Status Conference, the Court allowed that this matter could be decided on the papers without a trial if the Court had the right papers to consider.   For instance, although the Superior Court Amended Judgment was attached to the Complaint, the original Superior Court judgment was not.   To cure this problem, the Plaintiffs attached a copy of the *Final Order and Judgment as to Defendant Asif Balagamwaca Only* to the Amended Complaint as Exhibit D (the "Superior Court Judgment").

6

International, Inc. with the "actual intent to hinder, delay, and defraud the Plaintiffs."   Motion for

Judgment, p. 3, citing Superior Court Complaint.

In support of their claim under Section 523(a)(2)(A), the Plaintiffs cite *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 359 (2016).   In that case, the United States Supreme Court stated that the term "actual fraud" as used in Section 523(a)(2)(A) includes "forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation."   The Plaintiffs further contend that the situation presented here is also analogous to the fact pattern in *PRN Real Estate & Investments, Ltd. v. Cole*, 85 F.4th 1324 (11th Cir. 2023).   This similarity is based on the fact that, as found by the Superior Court, the Obligation arose from the Transfer of corporate assets from one entity to another in the Debtor's fraudulent attempt to defeat enforcement of the collection of the Consent Judgment by the Plaintiffs.

In his Response, the Debtor counters that neither *PRN, supra,* nor *Husky, supra*, apply in this case because those decisions rest on facts absent here, since the Debtor did not obtain money or property through the alleged fraud as required by Section 523(a)(2)(A).   In those cases, the debtor received net economic value since the transfers at issue moved assets from entities the debtor partially owned to entities that the debtor completely controlled.   By contrast, in the present case, the Debtor asserts that he owned one hundred (100%) percent of both Greenparts, Inc. and Green Parts International, Inc. and thus he obtained no net value from the Transfer.   In addition, the Debtor urges that the language contained in the Superior Court Judgment is not explicit enough to allow this Court to determine whether the Superior Court's ruling was necessarily based on a finding of actual fraud.   According to the Debtor, this conclusion follows since none of the Superior Court Order, the Superior Court Judgment, or the Superior Court Amended Judgment

specified which of two (2) alternative counts it relied, to wit; actual fraud or constructive fraud as alleged in the Superior Court Complaint.   As such, the Debtor insists that collateral estoppel does not apply.   *See In re St. Laurent*, 991 F.2d 672, 676 (11th Cir. 1993).[8]

II.   *Dischargeability Standard*

Under 11 U.S.C. § 523(a)(2)(A), "any debt ... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" may be excepted from discharge.[9]   A debt may be excepted from discharge when it occurs "in relation to the commission of 'positive or actual fraud involving moral turpitude or intentional wrongdoing.'"   *Invest Atlanta Reg'l Center, LLC v. Smith (In re Smith)*, 578 B.R. 866, 875 (Bankr. N.D. Ga. 2017)(citations omitted).   Further, "'legal or constructive fraud, which involves an act contrary to a legal or equitable duty that has a tendency to deceive, yet not originating in an actual deceitful design, is insufficient.'"   *Id.* at 876 (citations omitted).   To prevail on a claim under Section 523(a)(2)(A), a creditor must establish that the debtor "'obtained money, property or credit from the Plaintiff: (1) by false representation, pretense, or fraud; (2) knowingly made or committed; (3) with the intent to deceive or to induce acting on same; (4) upon which the Plaintiff actually and justifiably relied; and (5) from which the Plaintiff suffered damages, injury or loss as a proximate result.'"   *Id.* at 876 (citations omitted).

---

[8] Of course, although collateral estoppel may be applied to a state court's prior findings regarding liability and damages, the determination of nondischargeability lies exclusively within the province of the bankruptcy court. *Hinton v. Blocker (In re Blocker)*, 2020 WL 247311, *3 (Bankr. N.D. Ga. Jan. 15, 2020)(citation omitted).

[9] Based on the presumption under 11 U.S.C. § 727(b) that all debts are dischargeable, a party contending to the contrary under an exception to dischargeability bears the burden of proof and must establish its claim by a preponderance of the evidence.   *Grogan v. Garner*, 498 U.S. 279, 287-88, 291 (1991).

III.     *Collateral Estoppel*

The doctrine of collateral estoppel is designed to prevent the re-litigation of any issue that was necessarily adjudicated in prior litigation.  *See In re Bilzerian*, 100 F.3d 886, 892 (11th Cir. 1996).  The United States Supreme Court has also recognized that issue preclusion applies in dischargeability actions.  *Grogan v. Garner*, 498 U.S. 279, 284, n.11 (1991).  Under this doctrine, in reviewing a prior judgment from another court, federal courts must accord the judgment the same preclusive effect as it would be allowed under the law of the jurisdiction in which the judgment was decided.  *In re Wilder*, 2022 WL 4002261, *3 (Bankr. N.D. Ga. Sept. 1, 2022), citing *Lewis v. Lowery (In re Lowery)*, 440 B.R. 914, 921 (Bankr. N.D. Ga. 2010).  This Court, therefore, will turn to Georgia law to determine the preclusive effect of the Superior Court Order, Superior Court Judgment, and Superior Court Amended Judgment against the Debtor.

The Eleventh Circuit has held that the following elements must be satisfied for application of collateral estoppel under Georgia law:

> A party seeking to assert collateral estoppel under Georgia law must demonstrate that (1) an identical issue, (2) between identical parties, (3) was actually litigated and (4) necessarily decided, (5) on the merits, (6) in a final judgment, (7) by a court of competent jurisdiction.

*Community State Bank v. Strong*, 651 F.3d 1241, 1264 (11th Cir. 2011).  The party seeking application of collateral estoppel bears the burden of proving these elements have been met.  *In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1986).

IV.     *Analysis*

As previously mentioned, a key question in this case is whether and to what extent collateral estoppel applies such that the Debtor is bound by the factual findings of the Superior

9

Court underlying its imposition of liability and award of damages.   Before discussing this issue, however, the Court will address the parties' arguments regarding the proper analytical framework for deciding issues under 11 U.S.C. § 523(a)(2)(A).

### A. Dischargeability

The Debtor rightly observes that, under Section 523(a)(2)(A), the Plaintiffs must prove that *he obtained money or property* through the allegedly fraudulent Transfer.   *See Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998);   *see also PRN, supra*, 85 F.4th at 1329.   The Debtor is also correct that this element is not the same as proving the circumstances under which the Plaintiffs' claim of debt arose, *i.e.*, that the debt was created through fraud.   In construing these statutory elements, however, the Debtor reads the former requirement (that he obtained money), too narrowly.   Stated differently, whereas the Debtor may not have personally received a net increase in economic value through the Transfer, given his ownership of and control over both the transferring and receiving corporate entities,[10]  the receiving entity, Green Parts International, Inc., *did* obtain money and property through the Transfer.

As held by the Eleventh Circuit, it is sufficient if the plaintiff shows that a debtor gained a benefit from the funds that were obtained via fraudulent means.  *Bilzerian*, *supra*, 100 F.3d at 890.[11]   The Debtor was the 100% owner of Green Parts International, Inc. and through his close

---

[10] The Debtor contends that "essentially…[he] moved the assets and liabilities from his right hand to his left." Response, p. 2.   This analogy is of course not apt, as once the assets arrived in the "left pocket", they were free of the claims of the creditors of the "right pocket", rendering them substantially more valuable.

[11] In *Bilzerian*, *supra*, the Eleventh Circuit observed that three (3) views had emerged in the case law regarding the question of whether a debtor must personally receive the transfer of property in issue under 11 U.S.C. § 523(a)(2)(A). 100 F.3d at 890.   Of these, the court adopted the second test—whether the debtor gained a benefit in some way.   The court declined to adopt the first view (debtor must personally receive a benefit) and the third view (debtor does not necessarily need to receive any benefit).  *Id.*

connection to, position with, and financial interest in, that company, he would have obtained a benefit from any infusion of capital made to this new corporate entity.   Such an infusion enabled the transferee to commence operations even as the infusion shielded those funds from the reach of the Plaintiffs.   *Bilzerian, supra; see also In re Ritz*, 567 B.R. 715, 761 (Bankr. S.D. Tex. 2017), *as remanded*, 578 U.S. 355, *and as remanded*, 832 F.3d 560 (5th Cir. 2016).

Further, consistent with the ruling in the Superior Court Order, Superior Court Judgment, and Superior Court Amended Judgment, based on the allegations contained in the Superior Court Complaint (and striking of the Defendants' answer), the Debtor was found liable to the Plaintiffs through his conduct in abusing the corporate form of Greenparts, Inc. and Green Parts International, Inc. in perpetrating the Transfer.[12]

As this Court previously discussed in the Order, the Eleventh Circuit has examined *Husky, supra*, and application of the dischargeability exception under Section 523(a)(2)(A).   In *In re Gaddy*, 977 F.3d 1051, 1057 (11th Cir. 2020), the Eleventh Circuit distinguished the situation where a transferor-debtor allegedly transferred property to frustrate collection on a pre-existing debt and concluded same did not convert the debt sought to be avoided into one obtained by fraud. Thereafter, the court held in *PRN Real Estate*, *supra*, 85 F.4th at 1346, that when a state law alter ego claim is proven, a debtor-defendant participating in the suspect transfer with intent to hinder collection on a corporate debt may incur personal liability on the debt of the corporate transferee. In that case, the debt at issue is created through the debtor's role in the fraudulent transfer on behalf

---

[12] *See* Superior Court Complaint, ¶¶ 11-26.   Georgia law also recognizes the horizontal alter ego theory of liability between sibling companies.   *See ATG Sports Indus., Inc. v. ITS Sprinturf Holdings, LLC*, 2026 WL 696406, *3 (Ga. App. March 12, 2026).

of the transferee, and since it is obtained by actual fraud it can support a viable *Husky* claim for exception to discharge under Section 523(a)(2)(A).  *PRN Real Estate*, *supra*, 85 F.4th at 1347-49.

As previously outlined in more detail in the Order, this Court finds the facts in the current case more closely aligned with the facts in *PRN Real Estate* because the Obligation or debt to the Plaintiffs can be traced to the Debtor's alleged fraudulent receipt of money or creation of a debt through corporate entities he controlled.  *See* Superior Court Complaint, ¶ 25.[13]  Again, the Debtor was not found liable in the Consent Judgment and was not even a party to that litigation. *See* Exhibit A, attached to the Amended Complaint.  Rather, the Debtor only became liable on a debt for money obtained by fraud when the Superior Court found that he violated Georgia's corporate veil-piercing law in connection with the allegedly fraudulent Transfer at issue.[14]

Thus, unlike *Gaddy, supra*, here the Superior Court Complaint alleged that the Debtor was liable to the Plaintiffs for the funds transferred, along with punitive damages, because of his role in the fraudulent transfer and on grounds of alter ego liability under Georgia law.  Like the reasoning and holding in *PRN, supra*, here the Debtor became liable to the Plaintiffs when he obtained a benefit from the Transfer to Green Parts International, Inc. free of the obligations of

---

[13] During the October Hearing, counsel for the Plaintiffs indicated there may be a separate claim for the Debtor's transfer of his own property or income to Green Parts International, Inc.  These would, however, be matters for the Chapter 7 Trustee to investigate.

[14] On the facts alleged, the Debtor could also be liable for "aiding and abetting" a fraudulent transfer, as either transferor or transferee, which would create personal liability without the need for piercing the corporate veil.  *See In re Aliera Companies, Inc.*, 665 B.R. 468, 515-16 (Bankr. N.D. Ga. 2024).  Liability is also possible when the defendant has conspired to assist in the commission of a fraudulent transfer to forestall a creditor's collection efforts. *See Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1088-90 (11th Cir. 2004).

Green Parts, Inc.,[15] and his debt to the Plaintiffs would be the result of his allegedly fraudulent conduct.   85 F.4th at 1349 (applying Nevada's alter ego and fraudulent transfer law); *see also Ritz, supra*, 567 B.R. at 773.   Section 523(a)(2)(A) thus applies to the Obligation if the remaining elements of that discharge exception are proven.

B. *Preclusiveness of Superior Court Findings*

With respect to application of collateral estoppel, both the Plaintiffs and the Debtor were parties in the Superior Court action and in this Adversary Proceeding, and so the parties are identical.   Further, a default judgment may be recognized as a judgment on the merits and accorded preclusive effect by meeting the "actually litigated" requirement.   *Wilder, supra*, at *4, citing *In re Dowd*, 616 B.R. 212, 222 (Bankr. N.D. Ga. 2020).   The operative questions of fact were put in issue by the pleadings and submitted to the Superior Court for decision.   Judgment by default was entered via the Superior Court Order.[16]   No one has contended it was not properly entered, and the Debtor has not contested having had a full and fair opportunity to participate in the Civil Action.   It also appears that the Superior Court Order, the Superior Court Judgment, and the Superior Court Amended Judgment were final as to the Debtor, since through those rulings the

---

[15] The Plaintiffs allege that Green Parts International, Inc. assumed all liabilities of Greenparts, Inc. except for its obligation to them.

[16] No specific findings of fact were made of record, and the Court accepts the allegations in the Superior Court Complaint since the Defendants' Answer was stricken and it was on the basis of those allegations that the Superior Court entered the Superior Court Order, Superior Court Judgment, and Superior Court Amended Judgment.

13

Superior Court entered judgment against him as to liability and damages.[17]  Further, there does not appear to be an issue as to whether the standard of proof used by the Superior Court was at least as stringent as that required in this matter, since a finding of nondischargeability requires proof by a preponderance of the evidence.   In addition, no one has disputed that the Superior Court had proper jurisdiction.

That brings us to the question of whether the Superior Court Order, the Superior Court Judgment, and the Superior Court Amended Judgment are specific enough as to the theory on which the damages were assessed.[18]  Limited to those court orders, however, this Court cannot determine whether the issues decided by the Superior Court were identical to those presented in this nondischargeability matter.   Similarly, it cannot be determined from the relevant documents whether those issues were essential and necessary to the Superior Court Order, the Superior Court Judgment, and Superior Court Amended Judgment, since counts alleging either actual fraud or constructive fraud could have supported the money judgment.[19]

The application of collateral estoppel can be challenging in nondischargeability actions. This is especially true when, as here, a state court default final judgment is entered on all fraud counts, rendering it impossible to determine which grounds actually served as the basis for

---

[17] As mentioned above, the reason that the Superior Court did not enter the Superior Court Judgment and Superior Court Amended Judgment against Green Parts International, Inc. was because of its bankruptcy filing.   Thus, there was more for the Superior Court to do against that entity but not as to the Debtor in terms of rendering judgment. *Compare Dowd, supra*, 616 B.R. at 224 (finding default judgment entered against debtor was not final because the debtor filed bankruptcy before the state court entered a decision setting the amount of attorneys' fees and punitive damages awarded).

[18] *See* discussion, *infra*, regarding why the Court asked counsel to supplement his pleading with a copy of the Superior Court Judgment so it could see whether it provided more detail as to the basis of the Superior Court's ruling.

[19] *See generally Community State Bank, supra*, 651 F.3d at 1268 ("necessarily decided" requirement "prevents judgments that rest on ambiguous grounds from having issue preclusive effect").

liability.  *See In re Seraphin*, 2025 WL 2803562, *5 (Bankr. S.D. Fla. Oct. 1, 2025), citing *In re Harris*, 3 F.4th 1339, 1346-49 (11th Cir. 2021);  *see also In re Trexler*, 528 B.R. 842, 849-50, 854 (Bankr. N.D. Ga. 2015).   To establish a successful claim with respect to 11 U.S.C. § 523(a)(2)(A), it must be established that the Debtor performed the acts in question with an *actual* intent to defraud—constructive fraud, as also alleged in the Superior Court Complaint and thus a possible basis for liability, without further detail, is not sufficient.

As mentioned above in notes 7 and 18, *supra*, to conduct a proper review regarding whether collateral estoppel precludes re-litigation of the facts purportedly in dispute, as the Court stated at the Status Conference, it needed to see the Superior Court Judgment.   Recognizing that it may or may not provide any rationale or explanation for the ruling of the Superior Court, the Court noted that the issue of what facts the Debtor may be estopped from re-trying depends on what that original judgment says, *i.e.* does it contain any explanatory findings or rationale?   Or does it simply state the dollar amount of damages awarded without referring to which counts relief is granted on and why?

As mentioned, the Plaintiffs attached a copy of the Superior Court Judgment to the Amended Complaint and argue that the filings of record in this case are sufficient to resolve the entire matter without the need of a trial.   Unfortunately for their case, however, the Superior Court Judgment does not add any more detail specifying on what basis the Superior Court imposed liability against the Debtor and awarded damages to the Plaintiffs.   Instead, like the Superior Court Amended Judgment, the Superior Court Judgment merely sets forth the amount of damages (later corrected by the Superior Court Amended Judgment), leaving this Court no basis for conclusively discerning on which particular factual allegations or legal theory the Superior Court

15

based its ruling.[20]   Nowhere in the Superior Court Order, Superior Court Judgment, or Superior

Court Amended Judgment did the Superior Court refer to specific counts in the Superior Court

Complaint.   As such, this Court must examine every count on which damages could have possibly

been awarded to conclude whether the issues litigated in the Civil Action are the same as those to

be determined herein under Section 523(a)(2)(A).   Count I alleges the Debtor and Green Parts

International, Inc. are jointly and severally liable with Greenparts, Inc. under a theory of alter ego

liability.   Although the Plaintiffs allege in Count II that the Transfer was accepted "with

knowledge of Greenparts, Inc.'s intent to hinder, delay and defraud" (actual fraud under O.C.G.A.

§ 18-2-74(a)(1)), Count III states that Greenparts, Inc. "knew or should have known that the

[Transfer] would render it insolvent" (constructive fraud under O.C.G.A. § 18-2-74(a)(2)).

Superior Court Complaint, ¶¶ 29, 33.

Likewise, even though the Superior Court awarded punitive damages, based on the

allegations in the Superior Court Complaint and the language of O.C.G.A. § 51-12-5.1(b), such

damages could have been awarded on the basis of "willful misconduct, malice, fraud, wantonness,

oppression, or that entire want of care which would raise the presumption of conscious indifference

to the consequences" or any combination of these bases.   Conscious indifference, which is similar

to reckless disregard, does not meet the standard set forth in 11 U.S.C. § 523(a)(2)(A).   Because

the Superior Court did not identify on which ground it based its award, it is ambiguous, and this

---

[20] The Superior Court states in the Superior Court Judgment that a money judgment was entered after a hearing on damages with the submission of evidence, but adds no further information or detail.   As mentioned, the Superior Court also states that judgment is entered against the Debtor only because Green Parts International, Inc. had filed for bankruptcy.

Court will need additional evidence to fully and properly address this claim for relief.  *See Wilder, supra*, 2022 WL 4002261, at *7 (citations omitted).

In Count IV of the Superior Court Complaint ("Action to Set Aside Fraudulent Transfer"), it is alleged that the Debtor "entered into the agreement with the *specific intent* of rendering Greenparts, Inc. insolvent so as to avoid the liabilities of Greenparts, Inc. to the Jarretts."  ¶ 37 (emphasis supplied).   Even though this allegation might suffice on its own, again, coupled with the other allegations (*i.e.* constructive fraud) it is not unequivocally certain that this allegation in Count IV would support a finding in this Court as to the Debtor's actual intent to defraud.   It is also unclear how this count is different from the prior counts alleging fraudulent conveyance based on references to the applicable Georgia statutes for actual (Count II) and constructive (Count III) fraudulent transfer.

### Conclusion

As the Court stated in its prior Order, in proper circumstances, findings of fact in a state court default judgment can support a claim for relief under 11 U.S.C. § 523(a)(2)(A) under the doctrine of collateral estoppel.   Here, the Defendants' Answer was stricken in the Civil Action and based on the allegations in the Superior Court Complaint as admitted on default, and the finding on damages by the Superior Court after a hearing, the Debtor's liability and its amount have been established.

The Court further concludes, however, that the Superior Court did not indicate whether its finding of liability was based on actual fraud under O.C.G.A. § 18-2-74(a)(1) or constructive fraud under O.C.G.A. § 18-2-74(a)(2).   Because 11 U.S.C. § 523(a)(2)(A) requires proof of actual intent to deceive or defraud, neither the Superior Court Order, the Superior Court Judgment, nor the

Superior Court Amended Judgment can serve as a basis for collateral estoppel on the issue of the Debtor's intent in connection with the Transfer.[21]

Based on the foregoing discussion, it is

**ORDERED** that the Motion for Judgment is **DENIED** as to the Plaintiffs' claim for nondischargeability of debt regarding the Obligation as alleged in the Amended Complaint under 11 U.S.C. § 523(a)(2)(A) to the extent provided herein.   It is further

**ORDERED** that a trial will be held on separate written notice on two (2) limited questions of fact: (1) whether the Debtor orchestrated the Transfer with the actual intent to defraud the Plaintiffs; and (2) whether the Debtor's conduct in this regard was willful or only the result of conscious indifference in connection with the award of punitive damages in favor of the Plaintiffs.

The Clerk is directed to serve a copy of this Order upon counsel for the Plaintiffs, counsel for the Debtor, the Chapter 7 Trustee, and the United States Trustee.

**[END OF DOCUMENT]**

---

[21] If the Plaintiffs succeed at trial on this specific issue, the Obligation could be held nondischargeable as arising from actual fraud in accordance with *Husky, supra,* and *PRN Real Estate, supra*, as the remaining elements of Section 523(a)(2)(A) have been satisfied.

18